

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00310-CV

**YATES ENERGY CORPORATION**, EOG Resources, Inc., Jalapeno Corporation, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., and Curry Glassell, Appellants

v.

**BROADWAY NATIONAL BANK**, Trustee of the Mary Frances Evers Trust, Appellee

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2015PC2618
Honorable Tom Rickhoff, Judge Presiding

Opinion by:     Marialyn Barnard, Justice
Concurring Opinion by: Patricia O. Alvarez, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: December 19, 2018

REVERSED, RENDERED AND REMANDED

Appellee Broadway National Bank, Trustee of the Mary Frances Evers Trust (hereinafter, "Broadway Bank"), brought suit against appellants, Yates Energy Corporation, EOG Resources, Inc., Jalapeno Corporation, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., and Curry Glassell, seeking a declaration as to the validity of an amended correction deed covering real property interests in DeWitt County and Gonzales County.  After the parties filed competing motions for summary judgment, the probate court granted summary judgment in favor of

Broadway Bank and declared, among other things, the amended correction deed to be a valid deed that conveyed only a life estate to Eben John Evers ("John"). On appeal, appellants argue the probate court erred in: (1) granting summary judgment in favor of Broadway Bank because the suit was barred by limitations as a matter of law; (2) finding that the 2003 Trust Amendment authorized the trustee to convey only a life estate to John; and (3) concluding the amended correction deed complied with the requirements of the material corrections statute as set out in section 5.029 of the Texas Property Code ("the Code"). Appellants further contend that in the event we determine the amended correction deed to be a valid deed, any rights claimed under it are subject to appellants' interests pursuant to section 5.030 of the Code. Finally, appellants argue the probate court erred in denying their breach of express warranty claim against Broadway Bank and denying their request for attorney's fees. After consideration, we reverse judgment of the probate court and render judgment that the amended correction deed did not comply with the requirements of the material corrections statute as set out in section 5.029 of the Code. With respect to appellants' breach of express warranty counterclaim, we reverse the probate court's judgment denying the counterclaim and remand the counterclaim and the issue of attorney's fees to the probate court for further proceedings consistent with this court's opinion.

## BACKGROUND

This case concerns the ramifications of an amended correction deed executed in 2013 ("the 2013 Amended Correction Deed") by Broadway Bank, as trustee of an intervivos trust created by Mary Frances Evers. During her lifetime, Mary executed several amendments to the trust. The final amendment was dated February 28, 2003 ("the 2003 Trust Amendment") and, among other things, set out how the trust property would be allocated upon her death. On September 3, 2003, Mary died, and at the time of her death, the trust estate included mineral interests in DeWitt County and Gonzales County.

According to the terms of the 2003 Trust Amendment, upon Mary's death, Broadway Bank, as trustee, was responsible for allocating the trust property to Mary's descendants who survived her in per stirpes shares. It is undisputed that Mary's surviving descendants included her four children: Mariellen Evers Dyal, Sandra Evers Pierce, Jamie Evers Drago, and John. The 2003 Trust Amendment further provided that Broadway Bank "shall distribute each share allocated for a descendant of settlor (other than Mariellen Evers Dyal, Eben John Evers or any descendant of William Harry Evers) to such descendant, per stirpes." With regard to any share of trust property allocated for a child of settlor but not distributed, that share should be distributed to Broadway Bank to hold as trustee in a separate trust for that descendant. The 2003 Trust Amendment also provided that with regard to the trust estate allocated to John, in the event his separate trust did not terminate during his lifetime, then it should terminate upon his death with the remaining trust estate to be divided into two equal shares: (1) one share being distributed to Jamie, if she survives John, and if she does not survive him, then her surviving descendants, per stirpes and (2) the other share being distributed to Mike E. Dyal, if he survives John, and if he does not survive him, then his surviving descendants per stirpes.

In addition to these provisions, the 2003 Trust Amendment included a section outlining the powers of the trustee. Specifically, Mary granted the trustee all the powers conferred on trustees by Texas trust law. Mary also granted the trustee additional enumerated powers, including the power "to sell, exchange, encumber, lease for any period, or otherwise dispose of any asset of a trust estate, publicly or privately, with or without notice, wholly or partly for cash or credit, without appraisal, and to give options for those purposes."

In 2005, Broadway Bank, acting as trustee of the trust, executed a Mineral Deed ("the 2005 Mineral Deed"), which conveyed, among other interests,[1] an undivided 25% interest in the trust's mineral interests in DeWitt County and Gonzales County to John. It is undisputed that the conveyance was in fee simple. Thereafter, in 2006, Broadway Bank executed a Correction Mineral Deed ("the 2006 Correction Mineral Deed"), changing the fee mineral interest conveyed to John to a life estate. The 2006 Correction Mineral Deed further conveyed the remainder mineral interest in the following amounts to Jamie's descendants[2] – Benjamin Drago (1/4) and Mary Drago Strebeck (1/4) – and to Mike E. Dyal (1/2). It is undisputed John did not sign the 2006 Correction Mineral Deed.

In 2012, John executed a Royalty Deed (the "2012 Royalty Deed"), conveying all of his "right, title and interest in and to any and all royalty interests in oil, gas, and other minerals produced, saved, and marketed from the lands covered by those certain oil and gas leases described on Exhibit 'A'" to Yates Energy Corporation. The leases listed in Exhibit A included multiple leases covering the mineral interests in DeWitt County and Gonzales County that were conveyed to John by Broadway Bank. The 2012 Royalty Deed was dated effective February 1, 2012 and thereafter filed and recorded in the DeWitt County and Gonzales County deed records. John also executed an Assignment of Overriding Royalty Interest, assigning all of his right, title, and interest in any and all the overriding royalty interests in the oil, gas, and other minerals produced from certain leases, including those leases covering the subject interests, to the Yates Energy Corporation. The assignment was also dated effective February 1, 2012 and filed and recorded in

---

[1] In addition to the conveyance to John, the 2005 Mineral Deed also conveyed the trust's mineral interests in DeWitt County and Gonzales County to the following individuals in the following portions: (1) an undivided 25% interest to Sandra Evers Pierce; (2) an undivided 12.5% interest to Benjamin F. Drago; (3) an undivided 12.5% interest to Mary Drago Strebeck; (4) an undivided 8.33% interest to Traci L. Cole; (5) an undivided 8.34% interest to Mike E. Dyal; and (6) an undivided 8.33% interest to Patrick T. Dyal.
[2] The record reflects Jamie died on October 13, 2004.

the DeWitt County and Gonzales County deed records. Yates Energy Corporation then, pursuant to a farmout agreement with EOG Resources, assigned 70% of its rights in the royalty interests to EOG Resources. Ultimately, Yates assigned its remaining rights in the royalty interests to Jalapeno Corporation, EnerQuest Oil & Gas, LLC, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., Curry Glassel, DKE Dyersdale, Inc., Cathy Dohnalek, Walter Mengden, Jr., WHMIII Dubose, LLC, Joseph Mengden, Carl C. Mengden, Susan Mengden, Michel C. Mengden, and Pati-Dubose, Inc. These instruments were also dated effective February 1, 2012, and filed and recorded in the DeWitt County and Gonzales County deed records.

In August of 2013, a title attorney informed EOG Resources that the 2006 Correction Mineral Deed raised a number of concerns, first of which that it could be considered to be invalid because it was not executed by the grantees of the 2005 Mineral Deed. To further complicate matters, the title attorney indicated the 2003 Trust Amendment could be interpreted as only authorizing Broadway Bank to convey a life estate in the trust property to John, and in the event of such interpretation, then Broadway Bank could only convey what it was authorized to convey to John as opposed to the fee simple estate in minerals it conveyed in the 2005 Mineral Deed. The title attorney concluded that for the 2006 Correction Mineral Deed to be valid, an amended correction deed should be executed by "all of the parties to show that [John] and all of the [g]rantees to said [2005 Mineral Deed] accept the change of ownership in the [2006 Correction Mineral Deed]." The title attorney further concluded that if an amended correction deed was executed, it would affect the type of interest – life estate or fee – John conveyed to Yates Energy Corporation in the 2012 Royalty Deed and Assignment of Overriding Royalty Interest, and subsequently, the type of interest Yates Energy Corporation assigned to EOG Resources. The title attorney advised that if EOG Resources wanted to secure a full fee estate interest, it needed to

obtain John's life estate interest from Yates Energy Corporation and assignments of overriding royalty from the remaindermen identified in the 2006 Correction Deed.

On November 4, 2013, Broadway Bank ultimately executed an amended correction deed ("the 2013 Amended Correction Deed"), which was signed by Broadway Bank, John, and all of the original grantees of the 2005 Mineral Deed. The 2013 Amended Correction Deed, however, was not signed by Yates Energy Corporation or any of the assignees in the subsequent assignments executed by Yates Energy Corporation. The 2013 Amended Correction Deed provided that the 2005 Mineral Deed made an incorrect conveyance of fee to John and stated it replaced the 2005 Mineral Deed. Under the 2013 Amended Correction Deed, Broadway Bank conveyed a life estate in an undivided 25% of trust's mineral interests in DeWitt County and Gonzales County to John, with a remainder interest to Benjamin Drago (1/4), Mary Drago Strebeck (1/4), and Mike E. Dyal (1/2).

On February 10, 2014, John died, and the parties disputed whether the royalty interests John conveyed to Yates Energy Corporation and that Yates subsequently assigned to others vested in Benjamin Drago, Mary Drago Strebeck, and Mike E. Dyal – the remaindermen identified in the 2013 Amended Correction Deed. On July 31, 2015, Broadway Bank filed a request for declaratory relief against Yates Energy Corporation, EOG Resources, Jalapeno Corporation, EnerQuest Oil & Gas, LLC, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., Curry Glassel, DKE Dyersdale, Inc., Cathy Dohnalek, Walter Mengden, Jr., WHMIII Dubose, LLC, Joseph Mengden, Carl C. Mengden, Susan Mengden, Michel C. Mengden, and Pati-Dubose, Inc. In its request for declaratory relief, Broadway Bank sought a declaration that: (1) Yates Energy Corporation acquired only a life estate under the 2012 Royalty Deed, and (2) Mike E. Dyal and

Westco Family Limited Partnership[3] currently own the remainder interests. In its petition, Broadway Bank also alleged Dyal and Westco Family Limited Partnership were necessary parties; subsequently, Dyal and Westco Family Limited Partnership answered and filed cross-claims against Yates Energy Corporation, EOG Resources, Jalapeno Corporation, EnerQuest Oil & Gas, LLC, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., Curry Glassel, DKE Dyersdale, Inc., Cathy Dohnalek, Walter Mengden, Jr., WHMIII Dubose, LLC, Joseph Mengden, Carl C. Mengden, Susan Mengden, Michel C. Mengden, and Pati-Dubose, Inc. also seeking the same declarations as Broadway Bank.

In response, the defendants filed multiple answers, raising several affirmative defenses, including limitations, statute of frauds, laches, and estoppel by deed. The defendants also filed counterclaims for breach of express warranty and declaratory relief, requesting declarations that: (1) the 2005 Mineral Deed was binding and enforceable; (2) the 2006 Correction Mineral Deed and 2013 Amended Correction Deed were ineffective; (3) Yates Energy Corporation's status as a bonafide purchaser is irrelevant because the 2006 Correction Mineral Deed and 2013 Amended Correction Deed were ineffective; and (4) Broadway Bank's express warranty of title and duty to defend extends to EOG Resources as John's successor and assign under the 2005 Mineral Deed. Broadway Bank then moved for summary judgment on its declaratory judgment action, and in response, the defendants filed multiple responses and cross-motions for summary judgment on their counterclaim for declaratory relief and affirmative defenses.

The probate court ultimately granted summary judgment in favor of Broadway Bank, declaring: (1) the 2013 Amended Correction Deed to be a valid deed that granted John only a life

---

[3] It is undisputed that by February 4, 2014, Westco Family Limited Partnership acquired all interests of Benjamin Drago and Mary Drago Strebeck, including any mineral and royalty interests conveyed to them in the 2006 Correction Mineral Deed.

estate in the mineral interests; (2) Yates Energy Corporation only received a life estate in the interests it obtained from John; and (3) Dyal and Westco Family Partnership own the remainder interests which vested in them upon John's death. Thereafter, the probate court rendered a final judgment, incorporating the probate court's order granting summary judgment in favor of Broadway Bank as well as an order awarding attorney's fees to Dyal and Westco Family Partnership. The final judgment also dismissed all the claims and causes of action asserted by or against the following defendants: DKE Dyersdale, Inc., Cathy Dohnalek, Walter Mengden, Jr., WHMIII Dubose, LLC, Joseph Mengden, Carl C. Mengden, Susan Mengden, Michel C. Mengden, and Pati-Dubose, Inc. Appellants then perfected this appeal.

## ANALYSIS

On appeal, appellants raise several issues, arguing the probate court erred in: (1) granting summary judgment in favor of Broadway Bank because the suit was barred by limitations as a matter of law; (2) finding that the 2003 Trust Amendment authorized the trustee to convey only a life estate to John; and (3) concluding the 2013 Amended Correction Deed complied with the requirements of the material corrections statute as set out in section 5.029 of the Code and thus, effectively replaced the 2005 Mineral Deed. Appellants further contend that in the event we determine the 2013 Amended Correction Deed to be a valid deed, any rights claimed under it are subject to appellants' interests pursuant to section 5.030 of the Code. Finally, appellants argue the probate court erred in denying its breach of express warranty claim against Broadway Bank and denying its request for attorney's fees.

### *Standard of Review*

We review a trial court's grant of summary judgment de novo. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017); *Jarzombek v. Ramsey*, 534 S.W.3d 534, 535-36 (Tex. App.—San Antonio 2017, pet. denied). To prevail on a traditional motion for summary judgment,

the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *Nassar*, 508 S.W.3d at 257; *Jarzombek*, 534 S.W.3d at 536; *Webb v. Martinez*, No. 04-16-00042-CV, 2016 WL 7234044, at *1 (Tex. App.—San Antonio 2016, no pet.) (mem. op.). "When a party moves for a no-evidence summary judgment, the nonmovant must produce some evidence raising a genuine issue of material fact." *Webb*, 2016 WL 7234044, at *1 (quoting *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.)). "In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant." *Whitfield v. Ondrej*, No. 04-15-00052-CV, 2016 WL 7383823, at *3 (Tex. App.—San Antonio 2016, no pet.) (mem. op.). When, as is the case here, all parties move for summary judgment and the trial court grants one but denies the others, we review all the summary judgment evidence, determine all the issues presented, and render the judgment the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

### *Material Corrections Statute*

Because it is dispositive, we begin by addressing appellants' argument that the 2013 Amended Correction Deed is invalid because it failed to comply with the material corrections statute. According to appellants, the statute requires the 2013 Amended Correction Deed to be executed by John's successors and assigns – in this case, Yates Energy Corporation, EOG Resources, Jalapeno Corporation, EnerQuest Oil & Gas, LLC, ACG3 Mineral Interests, Ltd., Glassell Non-Operated Interests, Ltd., Curry Glassel, DKE Dyersdale, Inc., Cathy Dohnalek, Walter Mengden, Jr., WHMIII Dubose, LLC, Joseph Mengden, Carl C. Mengden, Susan Mengden, Michel C. Mengden, and Pati-Dubose, Inc. Appellants contend that because John's successors and assigns owned a portion of the disputed interests when the 2013 Amended

Correction Deed was executed, the "if applicable" clause of the material corrections statute was triggered, requiring the successors and assigns to execute the deed. Appellants further contend that requiring only the original parties of the deed rather than the current interest holders to execute a correction deed would harm subsequent purchasers and cause title instability by divesting subsequent purchasers of property for which they paid consideration. Appellants therefore conclude that because the 2013 Amended Correction Deed was not signed by John's successors and assigns, it did not comply with the material corrections statute as a matter of law, and as a result, John was conveyed a fee simple estate in the mineral interests under the 2005 Mineral Deed.

In response, Broadway Bank contends appellants' interpretation of the material corrections statute ignores the plain language of the statute. Pointing to the word "or," Broadway Bank contends the material corrections statute requires a correction deed to be executed by either the original parties to the deed, or in the event an original party is unavailable, then that party's heirs, successors, or assigns. According to Broadway Bank, appellants' concern that its interpretation would harm subsequent purchasers ignores the protection section 5.030(b) provides to subsequent purchasers who qualify as bonafide purchasers. Broadway Bank therefore concludes that because the 2013 Amended Correction Deed was properly executed by the parties to the original instrument – Broadway Bank and John – the deed replaced the 2005 Mineral Deed.

*Applicable Law*

The Code authorizes the correction of a recorded instrument of conveyance of real property. *See* TEX. PROP. CODE ANN. §§ 5.028 & 5.029. These statutes – commonly known as the correction-instrument statutes – were added by the Legislature in 2011 in response to the Texas Supreme Court's decision in *Myrad Properties, Inc. v. La Salle Bank National Ass'n*, 300 S.W.3d 746 (Tex. 2009), which held a correction deed could not convey additional property. *Tanya L. McCabe Trust v. Ranger Energy LLC*, 531 S.W.3d 783, 794 (Tex. App.–Houston [1st Dist.] 2016,

pet. denied). The specific requirements a party must comply with depends on whether the correction being made to the original instrument is nonmaterial or material. *See* TEX. PROP. CODE ANN. §§ 5.028 & 5.029. Under section 5.028 of the Code, a person with personal knowledge of the facts relevant to the correction of an original instrument may execute a correction instrument that makes a nonmaterial change. *See* TEX. PROP. CODE ANN. § 5.028.

Here, however, it is undisputed that the 2013 Amended Correction Deed made a material correction to the 2005 Mineral Deed by changing the conveyance to John from fee simple to a life estate. In cases in which a material correction is made, we turn to section 5.029 for guidance. *See id.* § 5.029. Section 5.029(a) begins by identifying who may execute a correction instrument that makes a material correction. *Id.* § 5.029(a). It states:

> In addition to nonmaterial corrections, including the corrections described by Section 5.028, the parties to the original transaction or the parties' heirs, successors, or assigns, as applicable may execute a correction instrument to make a material correction to the recorded original instrument of conveyance. . . .

*Id.* Section 5.029(b) then identifies who *must* execute the correction instrument, providing that:

> A correction instrument under this section *must* be:
>
> (1)     executed by each party to the recorded original instrument of conveyance the correction instrument is executed to correct or, if applicable, a party's heirs, successors, or assigns; and
>
> (2)     recorded in each county in which the original instrument of conveyance that is being corrected is recorded.

*Id.* § 5.029(b) (emphasis added). A correction instrument that complies with either the nonmaterial or material correction statutes is deemed to be "effective as of the date of the recorded original instrument of conveyance." *Id.* § 5.030(a)(1) (emphasis added). In other words, it "replaces and is a substitute for the original instrument." *Id.* § 5.030(b).

Whether the material corrections statute requires the 2013 Amended Correction Deed to be signed by John's successors and assigns is an issue of statutory interpretation. We review issues

- 11 -

involving statutory interpretation de novo. *Tex. Lottery Com'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *Tanya L. McCabe Trust*, 531 S.W.3d at 794. When determining the meaning of a statute, our primary objective is to give effect to the intent of the Legislature. *Laredo Merchs. Ass'n v. City of Laredo*, No. 04-15-00610-CV, 2016 WL 4376627, at \*4 (Tex. App. Aug. 17, 2016), *aff'd*, 550 S.W.3d 586 (Tex. 2018). To determine the Legislature's intent, we start with the plain language of the statute before resorting to rules of construction. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We view the statute as a whole rather than in isolated provisions and apply ordinary meanings to any undefined words unless a different meaning is supplied by legislative definition, is apparent from the context, or the plain meaning leads to absurd results. *Laredo Merchs Ass'n*, 2016 WL 4376627, at \*4; *Tanya L. McCabe Trust*, 531 S.W.3d at 794.

*Application*

Viewing the statute as a whole, we hold section 5.029 sets forth two ways in which a correction instrument making a material change must be executed in order to replace an original recorded instrument. *See Laredo Merchs Ass'n*, 2016 WL 4376627, at \*4. The statute provides that the correction instrument must be "executed by each party to the recorded original instrument" – in other words, the original parties – or, if applicable, "a party's heirs, successors, or assigns." These ways are linked by the phrase, "or, if applicable" to which we must apply an ordinary meaning. *See id.*; *Tanya L. McCabe Trust*, 531 S.W.3d at 794. It is understood that the word "or" is a disjunctive conjunction "used to link alternatives." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1232 (2002). "The term separates words or phrases, indicating that 'either of the separated words or phrases may be employed without the other.'" *In re B.N.S.*, 247 S.W.3d 807, 809 (Tex. App.—Dallas 2008, no pet.) (citing *Jones v. State*, 175 S.W.3d 927, 932 (Tex. App.—Dallas 2005, no pet.)). The phrase "if applicable" is a conditional

- 12 -

clause meant to apply when appropriate or relevant. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 76, 865, & 1232 (2002). Therefore, when read together, which of the two separate ways a correction instrument making a material change must be executed depends on whether the condition outlined by the "if applicable" provision is triggered.

We hold the provision is triggered and a correction instrument making a material change must be executed by a party's heirs, successors, or assigns, as opposed to the original parties of the recorded instrument, if the property interest conveyed in the original instrument has been assigned or conveyed by an original party to that party's heirs, successors, or assigns. And although Broadway Bank argues against this interpretation, emphasizing the statute provides a choice in alternatives connected by the conjunction "or," we disagree because such an interpretation would render the conditional clause, "if applicable," meaningless. Here, contrary to Broadway Bank's assertion, the "if applicable" clause was triggered because John's successors and assigns were current interest holders at the time the 2013 Amended Correction Deed was executed; in other words, they were relevant parties who were required to sign the new deed.

Accordingly, to comply with section 5.029, the 2013 Amended Correction Deed was required to be signed by the original parties' heirs, successors or assigns. Stated differently, the 2013 Amended Correction Deed was required to be signed by the successors in interest to Broadway Bank, who were John and his siblings, as well as the successors and assigns to John, which was anyone who currently held an interest in the royalty at the time the 2013 Amended Correction Deed was signed.

Thus, based on the foregoing analysis, we hold that by including only the signatures of the original parties to the 2005 Mineral Deed and not the signatures of the parties' heirs, successors, or assigns, the 2013 Amended Correction Deed did not comply with the requirements of section 5.029 of the Code, and as a result, it did not replace the 2005 Mineral Deed. *See* TEX. PROP. CODE

ANN. § 5.030(a)(1). Accordingly, John received a fee simple mineral interest in the trust property under the 2005 Mineral Deed and subsequently conveyed a fee simple royalty interest to Yates Energy Corporation, which then assigned its rights in the royalty interests in the trust property pursuant to a farmout agreement and series of assignments dated effective February 1, 2012. We therefore hold the probate court erred in granting summary judgment in favor of Broadway Bank and declare the 2013 Amended Correction Deed to be invalid.

### *Breach of Express Warranty*

Turning to appellants' breach of express warranty counterclaim, appellants argue the probate court erred in denying its counterclaim against Broadway Bank. According to appellants, Broadway Bank breached the general warranty outlined in the 2005 Mineral Deed by attempting to change the fee mineral interest conveyed to John to a life estate. For support, appellants rely on the "hereby warrant said title . . . and do hereby agree to defend" language in the 2005 Mineral Deed. In response, Broadway Bank argues it did not breach any express warranty granted in the 2005 Mineral Deed because the 2005 Mineral Deed is ineffective and replaced by the 2013 Amended Correction Deed. From the probate court's judgment, it appears the probate court denied the relief the appellants sought in their breach of express warranty counterclaim based on its conclusion that the 2013 Amended Correction Deed is valid. Because we hold the 2013 Amended Correction Deed is not valid and therefore does not replace the 2005 Mineral Deed, we further hold the probate court erred in denying appellants' breach of express warranty counterclaim on that basis. Accordingly, because the trial court did not otherwise address the merits of this claim, we reverse the portion of the judgment denying appellants' breach of express warranty counterclaim and remand that counterclaim to the probate court for further proceedings.

***Attorney's Fees***

In their final argument, appellants argue the probate court erred in denying their request for attorney's fees. According to appellants, they are entitled to attorney's fees under either Chapter 37 of the Texas Civil Practice and Remedies Code based on their breach of express warranty counterclaim against Broadway Bank or Chapter 38 of the Texas Civil Practice and Remedies Code based on their counterclaim for declaratory relief.

Section 37.009 of the Texas Civil Practice and Remedies Code provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Moreover, section 38.001 of the Texas Civil Practice and Remedies Code permits an award of attorney's fees for breach of express warranty claims. *Id.* § 38.001; *Medical City Dal., Ltd. v. Carlisle Corp.,* 251 S.W.3d 55, 63 (Tex. 2008) (holding breach of express warranty claim constitutes suit based on written contract for purposes of section 38.001 of Texas Civil Practice and Remedies). In light of our disposition above, we also remand the cause to the probate court for reconsideration of the issue of attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *North Tex. Mun. Water Dist. v. Ball*, 466 S.W.3d 314, 323-24 (Tex. App.–Dallas 2015, no pet.) (remanding appeal involving cross motions for summary judgment to trial court for determination of attorney's fees).

CONCLUSION

Based on the foregoing, we hold the 2013 Amended Correction Deed did not comply with the requirements of section 5.029 of the Code, and as a result, it did not replace the 2005 Mineral Deed. We therefore reverse the probate court's judgment in favor of Broadway Bank and render judgment in favor of appellants that the 2013 Amended Correction Deed is invalid as a matter of law. We further reverse the portion of the probate court's judgment denying appellants' breach of express warranty counterclaim and remand the claim to the probate court for further proceedings.

Finally, based on our reversal and rendition relating to the validity of the 2013 Amended Correction Deed and our remand of appellants' breach of express warranty counterclaim, we remand the issue of attorney's fees to the probate court for reconsideration in light of our decision.

Marialyn Barnard, Justice